## Richmond

## NORFOLK AND WESTERN RAILWAY CO. & ANOTHER V. INTERSTATE RAILROAD CO.

### January 16, 1913.

1. EMINENT DOMAIN—*Taking Property of Public Service Corporation—Public Convenience—Property Essential to Company—Case at Bar.*—Under the provisions of clause 52 of section 1105-e of the Code of 1904 one public service corporation cannot condemn the property of another public service corporation "unless, after hearing all parties in interest, the State Corporation Commission shall certify that a public necessity or that an essential public convenience shall so require," and in no event shall one of such corporations condemn any property owned by and essential to the purposes of another such corporation. The evidence in the case at bar shows that "an essential public convenience" does require that the condemnation sought should be permitted, and that the property sought to be condemned is not essential to the purposes of the companies to which it belongs. The proposed condemnation will permit the bringing closer together passenger stations that are a mile apart, and will increase the competition of railroads by affording to large coal operators a new, better and enlarged market for their product. The owners of the land are only occupying about two-tenths of their holding and that proposed to be taken is not essential to their purposes.

2. APPEAL AND ERROR—*Decisions of State Corporation Commission.*—Under the provision of the Constitution the action of the State Corporation Commission is to be regarded, on appeal, as "*prima facie* just, reasonable and correct," and hence cannot be disturbed unless the evidence clearly shows that it was unwarranted, which, in the case at bar, it does not.

Appeal from State Corporation Commission.

*Affirmed.*

The opinion states the case.

*Jos. I. Doran, A. S. Brandies, E. M. Fulton, W. A.*

*Northcutt, Lucien H. Cocke* and *C. T. Duncan,* for the appellants.

*Bullitt & Chalkley* and *Rufus A. Ayers,* for the appellee.

HARRISON, J., delivered the opinion of the court.

This appeal is from a final order of the State Corporation Commission which establishes the right of the appellee company to take by condemnation proceedings certain property of the appellant companies for its line through the town of Norton to a connection with the Wise Terminal Railroad Company, and for depot and other facilities.

It appears that more than twenty years ago the two appellant companies projected their respective railroads to a point in Wise county, now the town of Norton, for the purpose of forming a connection with their tracks. At the point of connection the two companies acquired a tract of land, containing one hundred and ten acres, for terminal facilities. Not more than one-fifth of this land is now used for railroad purposes by the appellants, and it is through certain portions thereof that the appellee railroad company has, by the order appealed from, been allowed to condemn a right of way.

In disposing of this controversy the chairman of the Corporation Commission has reduced the views of that tribunal to writing and made the same a part of the record as follows:

"The commission feels as well prepared to decide this case now as it would be after further consultation and consideration.

"Our jurisdiction is conferred and limited by section 52 of chapter V of an act concerning corporations (clause 52, section 1105-e, Pollard's Code) which reads as follows: 'No corporation shall take by condemnation proceedings

any property belonging to any other corporation possessing the power of eminent domain, unless after hearing all parties in interest the State Corporation Commission shall certify that a public necessity or that an essential public convenience shall so require, and shall give its permission thereto, and in no event shall one corporation take by condemnation proceedings any property owned by and essential to the purposes of another corporation possessing the power of eminent domain.'

"To determine the issue raised by the petition, we are required to certify whether or not a public necessity or an essential public convenience requires the condemnation of the property described in the petition by the Interstate Railroad Company; and further, to ascertain whether the property which that company proposes to condemn is essential to the purposes of the Norfolk and Western Railway Company.

"We are not impressed with the soundness of the suggestion that the proposed location is not proper. We think that such locations, as fixed by the amended petition, are at the places where they will do the Norfolk and Western the least damage, and hence we do not suggest any amendment or change therein.

"The suggestion that there is a county road which will be interfered with is not sustained by the evidence. The facts are that negotiations are pending, the railway company having made a proposition to the board of supervisors of Wise county which has not yet been accepted, and which, at any time before it is accepted by the county authorities, may be withdrawn by the company. The county has neither accepted it nor done anything under the license to establish the road through the company's property.

"There is, of course, room for a fair difference of opinion as to what constitutes an essential public convenience within the meaning of the statute. The language is general in terms, and has never been defined, and we are of opinion

that such general terms were used for the purpose of giving this tribunal certain discretion in the application of the general policy of the State with reference to the building of railways. The "Rule of Reason," about which we hear so much at this particular time, should be applied. The general policy of this State is well established. That policy is to encourage the building and extension of railways. In general terms it may be said that this Commonwealth considers railroads essential public conveniences, otherwise they would not be vested with the power of eminent domain and the right to take private property, practically at will, by condemnation.

"The true construction of the statute, however, requires that when one public service corporation proposes to condemn the property of another there shall be some greater reason than the general policy of the State just referred to. Thus construing it, we inquire as to whether an essential public convenience requires this extension of the Interstate Railroad Company. The evidence submitted has convinced us that it does. The people of Norton and the general public traveling through Norton are now greatly inconvenienced by the fact that the passenger station of the Interstate is about a mile distant from the joint passenger station of the Norfolk and Western and Louisville and Nashville, which is also used by two other railroads entering Norton. Therefore, the general public will be greatly convenienced if the Interstate station is located nearer to their station. That the town council believe that the accomplishment of the purpose of the Interstate will prove to be a public convenience is perfectly apparent, because they have by ordinance agreed to devote one-third of the principal street of the town to this enterprise. The proposed station then is, in our opinion, an essential public convenience to the people of the town of Norton and a convenience to the traveling public going through the town.

It appears that the public convenience will also be promoted by the proposed connection of the Interstate with the Wise Terminal Company, which will afford an outlet for coal produced from a large number of coal mines, present and prospective, located on Guest river, by increasing competition between the railways at Norton, and by affording these coal operators a new market, a better market, or an enlarged market for their product. This will be brought about by permitting such coal to be transported via the Interstate, Virginia and Southwestern, and Southern Railway system—these three companies co-operating and likely to make joint rates, whereas the Norfolk and Western and Louisville and Nashville do not now make rates favorable to the large territory now reached by the Southern.

"We conclude, therefore, that the proposed extension and improvement is an essential public convenience to the coal operators as well as to the general public of that section.

"The other question remaining is whether the property which the Interstate proposes to condemn is essential to the purposes of the Norfolk and Western. As to this we have no doubt whatever. The property was acquired many years ago. It has been held, very wisely from the company's point of view, with the view of meeting future needs. It would, however, be contrary to public policy to permit this large body of land to be withdrawn from use and held so as to prevent proper railway development at Norton. It is claimed by the Norfolk and Western and Louisville and Nashville that all of the land is necessary for the purpose of building a round-house and many additional tracks. There is, however, no intention to build such round-house or to locate such additional tracks, except when and as they shall be needed, and there is nothing in this evidence to indicate that any such improvements will be needed any more rapidly in the future than they have in the past. At

this time, of that entire tract of land, consisting of one hundred and ten acres, the testimony shows that only about two-tenths is occupied. As to the location of the rounu- house in that particular corner of the land which the Inter-state needs for its purposes, we think that the plats filed and the oral evidence submitted plainly show that its location can be readily changed, and that it may be placed nearer the center of the property. It is also plainly apparent to us that even larger improvements than those suggested could be located nearer the center of the property, and that the proposed track of the Interstate may cross the corner diagonally, as proposed by the plan, without seriously interfering with such proposed future improvements by the Norfolk and Western and Louisville and Nashville.

"As to the eastern portion of the yard: while the tracks are more congested than they should be, still inasmuch as there is no other practical way of getting through Norton and serving the public there properly, without unreasonable expense, we think the prayer of the petition should be granted. The other plans suggested are all very expensive, and we are of opinion that the land desired by the Interstate is not essential to the Norfolk and Western, and that the proposed extension of the Interstate can, and should be, located there. There is sufficient room to do this without interfering with any property that is essential to the purposes of the Norfolk and Western, and both can operate there without seriously interfering with each other.

"For the reasons here indicated, the commission is prepared to enter an order granting the prayer of the petition."

The evidence in this case, which is voluminous, has been given due consideration. The facts necessary to a proper understanding of the questions involved are clearly and sufficiently stated in the opinion of the commission.

The weight and force to be given the conclusions reached by the Corporation Commission is emphasized by the Constitution, which provides that the action of the commission shall, on appeal, be regarded as *"prima facie just, reasonable and correct."* The finding of the commission cannot, however, be disturbed in the case before us, unless the evidence clearly shows that the finding was unwarranted. This it does not do. On the contrary, we are unable to see how the Corporation Commission could, with due regard to the rights of all parties, including the public, have reached a more just, reasonable and correct conclusion.

The judgment complained of must, therefore, be affirmed.

*Affirmed.*